This case number is 52-15-0646. We will say the name of the plaintiff's appellant, Thomas M. McQueen, and we will adjourn at all defendants at the meeting. I move on behalf of the plaintiff's appellants, attorney Ms. Tracy Stenck, I move on behalf of the defendants' appellees, attorney Mr. Steven M. Pucis, also I move on behalf of the appellees, attorney Mr. Scott Cohn-Powell. Okay, Ms. Stenck, you will have 15 minutes and Mr. Pucis 10 and Mr. Howie 5, correct? Okay, all righty, thank you. Okay, Ms. Stenck, you can proceed. May it please the court, counsel, my name is Tracy Stenck and I represent the plaintiffs. Louis Bianchi, the state's attorney in McHenry County and three of his employees were indicted and arrested based solely upon evidence that was fabricated and manufactured by the defendants during two investigations. Now, the plaintiffs originally... Counsel, when you say fabricated, can you be a little bit more specific as to what fabrication means? Because I think there are probably four or five definitions of the word fabrication. Absolutely. What the defendants did in this case, during the course of their investigation, in the course of two separate investigations, they went out and interviewed witnesses. And instead of accurately representing what those witnesses said, including accurately representing exculpatory evidence that the witnesses gave about Mr. Bianchi and the other plaintiffs, they wholly made up evidence. For example, now the two criminal cases involved... The first one involved Mr. Bianchi using his political office for... I'm sorry, using the state's attorney for political work. And the second prosecution involved him taking criminal cases in exchange for political contributions, giving defendants good deals. And in those cases, for example, in the first investigation, the defendants would go out and talk to a witness, employees of Mr. Bianchi, and ask them questions about whether or not Mr. Bianchi did in fact use the state's attorney's office to conduct political work. They said no. They gave statements. And instead, the defendants came out with reports that were completely opposite from what these witnesses said. Mr. McQueen, for example, was given a statement that one of the other defendants, one of the quest investigators, Mr. Segalski, had written about a statement that he took from a witness. And Mr. McQueen looked at that statement and he said, basically, this is no good. This is... what is this guy, a defense plant? And we have this all in emails, by the way. And Mr. Segalski, based on what Mr. McQueen said, his response to that statement, took the statement, took out all the exculpatory evidence, and replaced it with inculpatory evidence. Wholly made up inculpatory evidence. Another example. Mr. McQueen and another one of the defendants, Defendant Gerger, find out that there was a computer at the state's attorney's office that had a virus on it. And through the IT people at... in the county, found out that that virus deleted certain files on the computer. And that those files were deleted by absolutely no fault of Mr. Bianchi or his secretary, Ms. Sinek. But instead, they hid that evidence and indicted Mr. Bianchi and Ms. Sinek for... basically for obstructing justice, for deleting the files that they knew that the defendants had not deleted. So they made up evidence, they made up witness statements, and they also concealed exculpatory evidence. Now, the central issue in this case is whether or not the defendants are entitled to sovereign immunity when they've been alleged to have committed the torts, the intentional torts of malicious prosecution, intentional infliction of emotional distress, and defamation. And I wanted to start off briefly by discussing the defendant's position that they were in fact state employees at the time they conducted these investigations. Plaintiff's position is that they were not. Defendant McQueen was a private attorney who was appointed to assist... assist a specially appointed state's attorney. So was Tonegan... if Tonegan were in this case, would he be entitled to sovereign immunity because he was the actual one who was appointed and then he brought McQueen in? It's the plaintiff's position that there is sufficient case law in Illinois, specifically that a special state's attorney steps into the shoes of an elected state's attorney, that yes, Mr. Tonegan would be entitled to sovereign immunity because he was appointed to take the place of the state's attorney. And then he brought McQueen in. Correct. McQueen was never sworn in as a special state's attorney or anything like that? Whether or not he was sworn in, the plaintiffs do not yet have the evidence to indicate whether or not he officially took an oath or was sworn in. I can tell you that the... the actual order that appointed Tonegan, which is attached to our... our complaint, the order, the way that it reads is it says that Henry Tonegan is appointed as the special state's attorney pursuant to 55 ILCS 5-3-9008. To... There's more than one order. Correct. There's two orders. Right. The second order, so that was the first order, and in that order it did mention Mr. McQueen. The paragraph down it said that Thomas McQueen shall assist Tonegan, but did not indicate that he was being appointed pursuant to the state's attorney, that he was also a special state's attorney. Now, the second order... But can't you infer that from... from that? I mean, it mentioned him along with the appointment of Tonegan as the special state's attorney. Couldn't you infer that maybe he was Tonegan's assistant, if you will? I... I definitely concur that you can infer that he was an assistant. You could also infer that he was an assistant special state's attorney, except that... that definition or that position doesn't actually exist in Illinois law. Now, the Quest defendants, we're talking about an Illinois corporation that was hired by Tonegan to assist in this investigation, and the rest of the defendants were employees of Quest, not employees of the state. Now, even if this court does determine that the defendants were in fact state employees, and I'd be happy to answer any more questions that there are on that issue, but even if the court is to determine that they are state employees, they are not entitled to sovereign immunity because they are alleged to have committed intentional acts, acted maliciously, and acted in excess of their authority. Now, a state employee, whether it be a prosecutor, a state police officer, or any other employee, is not and should not be entitled to sovereign immunity for intentionally fabricating evidence or for maliciously causing the prosecution of a citizen without probable cause. What exactly do you mean when you say sovereign immunity? Are you saying that they're immune from suit, or are you saying that they... any claims have to be filed in the court of claims? Sovereign immunity would mean that any claims would have to be filed in the court of claims, and it's our position that the circuit court had jurisdiction in this case because there was no sovereign immunity that applied to the specific causes of action that were pled against these defendants. Are you arguing also that it's also to be tried in the circuit court because the acts that you've alleged do not implicate the state? Exactly. Because the issue of whether or not the state, obviously the state's not a party, but whether or not the state's actually... even though we filed the suit against the individual employees, the question is, is it really against the state, even though only the employees are named? And according to the Supreme Court in Loman v. Freeman, whether or not the state is the real party of interest depends on the issues involved and the relief sought. And as to the first factor, state employees are not entitled to sovereign immunity, meaning the circuit court would have jurisdiction if a complaint alleges that the employee acted in violation of the law or in excess of their authority. And in this case, the plaintiffs alleged that the defendants manufactured exculpatory evidence against the plaintiffs and hid exculpatory evidence in order to cause the prosecution of the plaintiffs. And those acts are not within the scope of any state employee's duties or authority. And as to the second inquiry, the relief sought, the question is whether or not a judgment for the plaintiffs would operate to control the actions of the state or subject it to liability. Now, the state clearly doesn't have a policy of requiring or even encouraging its employees to manufacture evidence, engage in malicious prosecution, or other intentional torts. And therefore, a judgment in favor of the plaintiffs on those torts would in no way restrain the state or its employees from lawfully carrying out its duties. The overwhelming majority of prosecutors and law enforcement officials in this state conduct fair and lawful investigations. In this case, we're dealing with defendants who abused their power and created false evidence. Their conduct, finding the defendants liable for that conduct, will in no way restrain or control the state or its state employees, state prosecutors, state police officers from carrying out their lawful duties. Now, the Supreme Court in Lohman v. Freeman held that a state employee that was alleged to have committed the intentional tort of conversion was not entitled to sovereign immunity. And although in that case the court was dealing with the intentional tort of conversion, whereas here we're clearly dealing with a different tort, malicious prosecution, the rationale in Lohman is equally applicable. The court in Lohman held that an employee was not entitled to sovereign immunity because the state can't have a policy of encouraging its employees to engage in or to commit intentional torts or the intentional tort of conversion. And just as the state does not have a policy of encouraging its employees to commit the intentional tort of conversion, it likewise does not have a policy encouraging its employees to engage in malicious prosecution, intentional infliction of emotional distress. And therefore, a judgment for the plaintiffs would in no way restrain state employees from the performance of their lawful duties, which is the whole purpose of sovereign immunity. What effect, if any, comes out of the Seventh Circuit or the Circuit Court of Appeals decision and the ruling of the trial judge in the district court? In the federal case that the plaintiffs originally filed, now the plaintiffs originally filed, as you know, a federal civil rights case in the district court alleging violations of their constitutional rights under Section 1983. And the district court dismissed those federal claims, and the Seventh Circuit has recently affirmed that dismissal. The courts basically determined that because the plaintiffs were acquitted, they didn't suffer a due process violation. There was no deprivation of liberty. They could... You're talking about a due process violation under the federal constitution? Correct, which is why the claims were dismissed by the federal court. The court dismissed our federal claim saying, you don't have a constitutional violation. You haven't applied a constitutional injury. You were acquitted. Your claims are properly pled... Your claims, your causes of action, are a malicious prosecution. And in the Seventh Circuit, malicious prosecutions cannot be pursued under 1983. They must be pursued in state court. So that was the rationale of the district court, which was affirmed in the Seventh Circuit. Sorry, you haven't pled a constitutional violation. Go to the state courts. Pursue your malicious prosecution in the state courts. So although the recent decision by the Seventh Circuit affirmed the district court, affirmed the dismissal of the constitution of the 1983 causes of action, it has no effect whatsoever on the state law claims of malicious prosecution. And, in fact, speaking of federal cases, the state courts haven't dealt with a lot of malicious prosecution cases against prosecutors. The federal courts have because they come a lot together with the federal civil rights cases, as we first attempted to do. And the federal courts have consistently helped when dealing with state law claims that sovereign immunity does not apply to state law claims that allege the concealment of exculpatory evidence or other law enforcement misconduct during an investigation. For example, the Seventh Circuit in Whitlock v. Brueggemann held that there's no sovereign immunity for state troopers that concealed exculpatory evidence. Saunders v. The City of Chicago, a northern district case, there's no sovereign immunity for a prosecutor that coerced witnesses. Cannon v. Burge, another northern district case, the court held that there was no sovereign immunity for the state's attorney making false public statements or suppressing evidence. Now I'd like to turn to the issue of malice. Because not only is malice clearly an element of the tort of malicious prosecution, malicious conduct is also outside of the state employee's authority and as such that employee would not be entitled to sovereign immunity for such conduct. Now malice is defined, as you are aware, as the initiation of a prosecution for any reason other than to bring a party to justice. And a plaintiff can demonstrate malice by showing that the prosecutor proceeded with the prosecution for the purpose of injuring the plaintiff or for some other improper motive. There is no question in this case that the defendant's actions, fabricating evidence, hiding exculpatory evidence, was not done for the purpose of pursuing justice. It could not have been. The defendants weren't acting accidentally or inadvertently. They didn't just make mistakes. They fabricated evidence intentionally and there was no good faith rationale behind their actions. Their prosecution, the investigations and the investigations that led to the prosecution were clearly not motivated by any desire to do justice. And that is the very definition of malice. Now the defendants... I'm going to ask you to wrap up. We have five minutes in rebuttal. Yes, thank you. And I can address malice more on rebuttal. But I just want to be clear that sovereign immunity, it's important that we look to the purpose and the intent of sovereign immunity. It's to protect the state. It's to protect the autonomy of the state and to protect state funds. It's not... To protect the people too. Protect the people. Protect the taxpayers. Applying sovereign immunity in this case, applying it to individuals who have abused their power and committed intentional wrongdoing would not serve the purpose of sovereign immunity, would not protect the state, would not protect the taxpayers. And for that reason, I would ask that you reverse the circuit court's ruling that there is no subject matter jurisdiction in this case. Thank you. Thank you, counsel. May it please the court. My name is Steve Cushis. I'm here to... You're going to put about 10 minutes on and then... Yes. Okay. Your Honor, Justice McLaren, in response to your question you asked about the impact of the Seventh Circuit decision. Once that decision is final, it has raised judicata effect on the parties in this case. One of the findings made in the Seventh Circuit decision was that McQueen was properly appointed pursuant to 5-3-9008. Every court that has looked at that issue has concluded he was properly appointed. Justice Spence, there was not one order, there was not two orders, there were three orders entered by Judge Graham below. I suggest taking a look at the October 2010 order where Judge Graham indicated that both McQueen and Conaghan were appointed as Special Assistant States Attorneys in the case. Okay, let's take that for what you're saying. Let's take it as fact. He was properly appointed. How did we get past sovereign immunity? I'm sorry, Your Honor? He's properly appointed. How did we get past sovereign immunity? Well, I don't think there is an issue with sovereign immunity. I would suggest we're relying on White v. City of Chicago and Sneed v. Howell where the appellate court found States Attorneys entitled to sovereign immunity against the White case involving the Capitol murder case where the allegations were that the States Attorney and one of his assistants did an investigation, knew the defendants had not committed any wrong whatsoever, reinvestigated witnesses, withheld exculpatory information, paid witnesses to falsely testify in front of a grand jury and in front of the jury. The other decision he cited was Sneed where it was a claim of maliciously, I'm sorry, willfully and wantonly disregarding your duties as the States Attorney in that case. Willful and wanton conduct as defined under the common law in Illinois is either intentional wrongdoing or, if not intentional, a conscious indifference or another disregard for someone's safety and well-being. In White, we had a claim of wrongful prosecution. We had a claim of intentional infliction of emotional distress. In Sneed, we had a claim of willful and wanton conduct. In each instance, sovereign immunity was granted to those prosecutors. Was it granted because those arguments failed on the law or because they failed on the facts? I believe they failed on the law, Your Honor, because in both instances, the court recognized in White, they said unlike sovereign immunity cases involving doctors or providers of medical care or drivers of vehicles, the duty of a prosecutor springs solely from his state employment. Both cases said that. And in this instance, the only way McQueen could be involved at all in this case would be pursuant to the appointment of Judge Graham. I could not, as a private attorney, simply come in and say, I want to investigate, indict, and prosecute my co-defense counsel in this case. There is no such thing as a private prosecutor. The only way McQueen could do anything would be pursuant to a court order. And so I submit that is how he is entitled to sovereign immunity. Prosecutors are entitled to sovereign immunity because their duties and responsibilities are exclusively by virtue of their employment. If prosecutors are entitled to carte blanche sovereign immunity, what would preclude them or what would require them to act prudently, to act honestly, judiciously, you know, do the right thing in prosecution of a case? You would have a moral obligation to do that. You may have an ethical obligation to do that. But if you violate your moral or ethical obligation, you can then be held liable in the court of claims for if you violated someone's rights for doing that. I don't understand why there is this notion that the court of claims is any less capable of delivering justice than the circuit court if, in fact, in one of those rare instances, a prosecutor did something wrong in terms of violating his oath or her oath. You're referring to it as sovereign immunity. Is it prosecutorial immunity or sovereign immunity we're talking about? Well, there's two different varieties of immunity. Sovereign immunity is the type where a claim against any state official or the state has to be brought in the court of claims. It's strictly a jurisdictional issue, Your Honor, much like the 11th Amendment is for federal court proceedings. Article 13, Section 4 of the Illinois Constitution says sovereign immunity is abolished to the extent unless it's recreated by the General Assembly. The General Assembly did that through the Court of Claims Act and provided a forum for actions against states or state actors. Don't they have to be acting within the scope of their employment, though? Yes, Your Honor. And so these allegations you're saying would be within the scope of their employment? If I might, Your Honor, if you read several of the decisions, there's a difference when we talk about scope of employment when we're dealing with state officers versus state employees. That's been a distinction that was recognized in several of the decisions. And that's why the issue has been formulated by Healy as did they act within the scope of their authority? Was the duty they breached arised independently or exclusively by virtue of their state employment? And do they involve matters normally within their official functions? So the case law that relates to being a prosecutor vis-a-vis being an investigator, those cases don't have anything to do with sovereign immunity, do they? Because if supposedly he's acting as an investigative employee of the state, he's still covered under sovereign immunity, isn't he? Yes, Your Honor. In fact, that point was made in White. The White, the appellate court in White recognized that the plaintiffs alleged that the prosecutors were acting as investigators or administrators, and the court said they were within their functional responsibilities and therefore notwithstanding that assertion, the claim had to be brought in the court of claims. So it was sovereign immunity in White. It wasn't prosecutorial. Well, there was both forms. There was both forms. Just like judges are... I'm sorry. Relative to the prosecutorial immunity. What do I have to say? I'm sorry. With regard to the prosecutorial immunity, Your Honor? Okay. I'll address that. Absolute prosecutors are entitled to absolute immunity for when they function as prosecutors. Okay? Now, there is a series of cases we've cited in our briefs. We start with Imbler and Henry. Prosecutor is entitled to absolute immunity irrespective of whether he reacted maliciously, unreasonably, or without probable cause. Imbler said a prosecutor is entitled to absolute immunity irrespective of whether the claim is that he suborned perjury or he withheld exculpatory information. Going to the point of Your Honor's question about claims that a prosecutor is acting as an investigator or as an administrator, I think that line of cases has to be looked at in light of two subsequent Supreme Court decisions, Vandekamp v. Goldstein. In Vandekamp, the Supreme Court recognized that there are certain administrative functions that are close to a prosecutorial function, training younger prosecutors, supervising prosecutors. So there are administrative functions that prosecutors perform to which they're entitled to raise absolute immunity. Reber addressed the claim that a prosecutor conspired with a witness before the witness went into the grand jury. And what is interesting about Reber is that a unanimous Supreme Court in Reber adopted Justice Kennedy's concurring and dissenting decision in Buckley v. Fitzsimmons. And if Your Honor recalls, we addressed that in some detail in our brief. But several of the points that Justice Kennedy made was that we're not going to recognize a form of absolute immunity that protects you for this particular act but leaves you out to dry for preparing for that act. If the Court recalls that in Buckley, even Justice Stevens, in his majority opinion, said a prosecutor only loses his absolute immunity when his actions are entirely, and I emphasize entirely, investigative in nature. And Stevens even noted in his majority opinion that absolute immunity can occur for functions in terms of preparation for a prosecution. And Reber goes on to address Kennedy. It endorses Kennedy's concurring and dissenting opinion where Kennedy says whether or not this happens before probable cause or after probable cause, it's irrelevant for absolute immunity. He recognizes that a core prosecutorial function is interviewing witnesses, finding out what they're going to say. Are they going to be able to withstand cross-examination? And he says if it's an important or a critical witness, that may happen even before a decision to indict has occurred. So I say before or after probable cause. Are you referring to before or after a reasonable person would assume, would conclude that there is probable cause? Or are you referring to whether or not the court of law has entered some sort of judgment that there is probable cause? Well, again, now you're getting into the final points where I disagree with what the approach the Seventh Circuit takes. The Seventh Circuit takes the position that if there's a question of fact on probable cause, there's no absolute immunity. And I submit that in light of Reber and the unanimous endorsement of Justice Kennedy's concurring and dissenting opinion, if a prosecutor has a reasonable and strong suspicion that there's probable cause, he's entitled to absolute immunity. And I submit in this instance, this whole thing began with an affidavit of Amy Dalby. And after reviewing that affidavit of Amy Dalby, Justice Graham concluded there were sufficient facts to, sufficient facts alleged to demonstrate that a prosecution may result. So I submit for purposes of absolute immunity, the Amy Dalby affidavit provides everything we need for absolute immunity to apply to everything that occurs thereafter. Well, if that is the case, then why should you need an additional order authorizing further investigation because the statute of limitations supposedly was running on Ms. Dalby's claims? If supposedly they were never prosecuted, the plaintiffs were never prosecuted on Amy Dalby's claims because the statute was running, then how could Amy Dalby's affidavit have any material effect on the second order of appointment allowing further investigation for crimes that weren't mentioned of record? Amy Dalby's affidavit led to the uncovery of other information consistent with her affidavit. And I would, and the other point is, is that the appointment order for a special prosecutor, a special prosecutor is under tighter reign than a state's attorney. A state's attorney is capable of running with an investigation. A special prosecutor is entitled to the same powers, authority, and protection to the extent referenced in the appointment order. A special prosecutor has to act the same as a regular prosecutor. I think the Buckley case continually points out that, you know, you're entitled to sovereign immunity if you are acting as an advocate for the people. And, you know, whether you're a prosecutor or whether you're a special prosecutor, you need to act as an advocate. How is their accusation or their allegations that they were fabricating testimony, leaving some testimony out, putting others in that was more damaging to Mr. Bianchi and the others, how is that conducting yourself as an advocate? Your Honor, well, if you, if you, Buckley indicates that a prosecutor is only, only loses absolute immunity where his investigations are entirely, I'm sorry, when his actions are entirely investigative in nature. As an advocate, in order to decide if I'm going to prosecute someone as an advocate. Before there was probable cause. I'm sorry? Before there was probable cause, Buckley talks about. If the evidence was fabricated prior to probable cause, correct? Well, that's, that's what Stevens's opinion says. Reber subsequently unanimously endorsed Kennedy's concurring and dissenting opinion where he criticized and said he could not follow a bright line test for probable cause. Because if that's the case, then you're going to be influencing decisions of prosecutors. Why would anyone do? Why would anyone do anything as an advocate to investigate potential wrongdoing in the absence of probable cause? We want to control the actions of the state. That's one way to control prosecutors from being fearless in the investigation of potential wrongdoing. So you're saying that if you privately create evidence that it shouldn't make any difference whether you do it before or after probable cause because Justice Kennedy suggested that shouldn't be a criteria or factor. I think the point of Justice Kennedy's opinion and what I'm arguing or suggesting here is that you have to take a more nuanced approach to the whole concept of absolute immunity. You have to look at whether or not what was happening or what the prosecutor allegedly did was part of his core prosecutorial function. Reviewing police reports, interviewing witnesses. Those are part of a prosecutor's core prosecutorial function. Spiegel versus Rubenowitz, the Seventh Circuit held that to be the case. Thank you. Thank you. Mr. Howie, how much time do we have left? Five minutes. May it please the court. I am Scott Howie and I represent the other defendants at the lease in this matter, Quest Consultants and its individual investigators. I'll be brief, Your Honors. I second Mr. Puchas in his arguments as to sovereign immunity and the requirement that the plaintiff's claims be brought in the court of claims. I speak separately, chiefly to underscore that those arguments apply with equal force to the Quest defendants, who were state employees for purposes of state immunity. They were, as the circuit court recognized, an extension of the special prosecutor and therefore state employees for the allegations covered by the complaint. And that finding reflects the Supreme Court's decision in Illinois in the Huey case where it recognized that whether an action is in fact one against the state and hence one that must be brought in the court of claims depends not on the formal identification of the parties but rather on the issues involved and the relief sought. And the issues involved in this case, Your Honors, established a setting for this case in which the Quest defendants had to be considered state employees because they were acting on behalf of the state, in turn, on behalf of the special state's attorney. Special state's attorneys act through their agents. They have to. In this case, they acted through agents who were retained as investigators. That's a power that's allowed to elected state's attorneys by the Illinois Code. An attorney who is appointed as a special state's attorney is entitled to the same powers and authorities that the elected state's attorney has. The state's attorney has among those powers the authority to appoint one or more special investigators to serve subpoenas, summonses, make return to process, and this is important, to conduct investigations which assist the state's attorney in the performance of his duties. So it was well within the authority of the special state's attorney to retain investigators, special investigators, who would be able to conduct the investigations called for in this case. In fact, the use of retained investigators here was particularly essential in the context of a special state's attorney where the elected state's attorney was the party being investigated. And the special state's attorney certainly couldn't very well rely upon the investigators who had been hired and employed by the very state's attorney who was under investigation. Who hired Quest? Was it Tonegan or McQueen? My recollection is it was Tonegan who retained Quest. But regardless of which of the two of them it was, they were retained in effect by the state of Illinois. They were state employees for that purpose, for the purpose of conducting an investigation that the state's attorney's, the elected state's attorney's own investigators could not participate in. Now, there's nothing to the contrary in the attorney general's determination with respect to indemnification. The attorney general's office was not concerned with the issue of immunity or jurisdiction when it determined that it had no obligation to provide a defense to the Quest defendants. The Supreme Court, in particular, found no linkage between the issues of immunity and jurisdiction at issue here and the question of indemnification as set forth by the State Employees Indemnification Act, which was the subject that the attorney general was investigating, or was interpreting. The Supreme Court indeedly, squarely, and expressly recognized that the purpose of the Indemnification Act is not to determine whether the doctrine of sovereign immunity is applicable in a particular case. Rather, it applies only to the question of indemnification. And regardless of whether the attorney general was correct in that determination, a sovereign immunity is a very different issue. Not only does it encompass appointed special state's attorneys, but it must also extend to the agents they retain to assist in conducting investigations, particularly in the context of this case involving an investigation of an elected state's attorney, of whose investigators could not very well take part. Not even the plaintiffs contend in this case that the Quest defendants were not acting on behalf of the special state's attorney. And in so doing, they were discharging duties in the service of the state. Because they were doing the work of the state and because their duties arose out of that employment, they are entitled to sovereign immunity in the same fashion that the special state's attorney and Mr. McQueen are. You're saying that would be the case regardless of what the allegations of misconduct are? Certainly there could be allegations of misconduct, which might fall outside the question of the purview of sovereign immunity. The allegations in this case do not fall outside because everything that the Quest defendants, as well as Mr. McQueen, are accused of doing concern the discharge of their official duty. It's important to recognize, and if I might take a moment to continue, it's important to recognize at this juncture all we have are allegations. They have not yet been tested. And of course we must consider them and we must treat them as true at this stage of the proceedings. But it's easy to make allegations. And the idea that something can fall outside of sovereign immunity merely because actions that are within a state employee's duties can be characterized in a fashion as being so bad or so egregious that they are beyond the authority would give the, if that were the interpretation, that would give the notion of sovereign immunity very little practical effect. No matter how the plaintiffs might characterize their allegations and the alleged offenses of which the defendants are allegedly guilty, they are still characterizing acts under the authority of the state, the investigation of an elected state's attorney, the interviewing of witnesses, the preparation of witness statements. The plaintiffs have a lot of allegations to make about those and they characterize them in nefarious ways. Thank you. And we simply ask that the court recognize that sovereign immunity applies to all defendants and affirm. Do you understand that if somebody reduced your argument to absurdity that it would be absurd? That if the authority relates to the investigation and prosecution of an allegedly criminal defendant, that ipso facto one could not be placed in jeopardy, one could not be convicted, one could not be sentenced unless you are acting within your authority regardless of how egregious your actions under that authority were. And you create a circumlocution which basically says, ergo, no matter what we do, no matter how bad it is, it is within our authority and therefore we are employees of the state and it should have been brought within the court of claims. I think I can make that a bit less absurd. Okay. Make it less absurd. Certainly we don't mean to suggest that any allegation against any state employee, whether a special state's attorney or a special investigator or whatever the case may be, don't mean to suggest that any allegation against those individuals could never fall outside of sovereign immunity. Certainly there are going to be situations where something might, and the Lawman case that the plaintiffs have discussed is a good example of that, conversion, something that couldn't reasonably be characterized as something within the authority of that state employee, the veterinarian employed by the state university system. Conversion under those circumstances is quite clearly beyond the bounds of the individual's authority. It's something that was far beyond what he was entitled and under a duty by his state employment to do. But in the conduct of an investigation such as this one and in cases like White and Sneed, those are cases in which the defendants were alleged to have been doing something within their authority. It was alleged to be an abuse of the authority, but yet it was still an action within those defendants' authority. And the other important thing to recognize is that when we talk about sovereign immunity, we are not talking about a question of whether the plaintiffs may bring a claim at all. Sovereign immunity is less a question of whether they can bring a claim and more an issue of where they must bring it. So, again, if there is any sense of absurdity in the argument that sovereign immunity applies here, it's resolved by the fact that sovereign immunity means the case can be heard and very well may be heard, but not in the form of the circuit courts, rather in the court of claims, which is the most appropriate form for it to be held. Thank you, sir. Thank you. Craig, put nine minutes on the clock for Ms. Stanker, please. The defendants argue if only their allegations were more egregious, maybe sovereign immunity wouldn't apply. If only the defendants' conduct was just a little bit worse, maybe sovereign immunity wouldn't apply. Maybe there's a situation it wouldn't apply. What is more egregious than a prosecutor and investigators abusing their power to fabricate evidence and frame innocent citizens? Under the defendant's philosophy, there could never, ever exist a claim against a state prosecutor or a state police officer for the tort of malicious prosecution. Because the tort itself requires that something occurred because of the duties that the prosecutors and investigators were given. The question is, did they act in excess of their authority? And clearly, prosecutors don't have the authority to make up evidence. And neither do investigators. So clearly, that conduct cannot be considered to be within the scope of the employee's duties. And I want to talk briefly about the case of White v. City of Chicago, which the defendants rely almost exclusively on when arguing that sovereign immunity should apply in this case. First of all, White, which is a First District case, was decided in 2006. And the plaintiffs would submit that that ruling was implicitly overruled by Lowen v. Freeman in 2008, which held that an allegation that a state employee committed an intentional tort in a wrongful act was not entitled to sovereign immunity because the state does not have a policy requiring or expecting its employees to engage in intentional torts. Second of all, White didn't say prosecutors have sovereign immunity for all malicious prosecution claims. It did not say that. That is not the holding of White. What it said was in that particular case, the plaintiffs had failed to plead specific facts that the defendants had acted maliciously and that they had acted beyond the scope of their duties. In this case, that's not true. We have pled specific facts. We haven't just alleged the defendants manufactured evidence, period. It's detailed in the complaint exactly the evidence that was manufactured. It's detailed in the complaint exactly what evidence was concealed. Now, going to the issue of absolute immunity, which is a prosecutorial immunity. Let me ask you this. If there is sovereign immunity, as counsel pointed out, Mr. Howey pointed out, you go to court of claims. Maybe you can educate me on why the trial court is your preference versus the court of claims. What is the problem with the court of claims? Well, because the court of claims isn't the right place to bring the suit. We'd be bringing a suit against two private individuals that the state, the court of claims is the state's court. The state is going to say they're not our employees, they don't belong here. So we go to the court of claims and the court of claims is going to say we don't have jurisdiction to hear this case because the state's not a party and these individuals are not employees. The circuit court has jurisdiction in this case and the case was properly brought in the circuit court. Is there a mechanism whereby you can file in both courts and ask both courts where should you be? And it's possible, unfortunately, they could say neither, but is that mechanism available? To be honest, I don't know. I suppose that's something that we could have done or we should have tried to do. But the plan's position was from the beginning that this case was properly brought in the circuit court and that the court of claims would not hear the case and should not hear the case because it was not brought against the state. But if we find, if this court finds that the partisan title to sovereign immunity, isn't that a ruling that the court of claims would follow? I'm sorry, I didn't hear the question. Wouldn't the court of claims follow our ruling? Wouldn't they be bound by our ruling? Well, I would hope so, but I think that, and again, this is just my opinion, that the court of claims treats itself as sort of a separate entity and I honestly don't know how they treat, if they treat rulings from... Well, they're bound by it. Right. If they have, if there's law of the case when the law is created in the circuit court... Do you think the statute of limitations runs on filing before the court of claims? Maybe I'm wrong, but I thought that there was a time limit that is involved in filing claims before the court of claims. That would be another issue that the plans would obviously be faced with. We made a decision when our claims were dismissed from the federal court, we made a decision to file them in the circuit court. And that's a decision that we obviously have to live with at this point. I have not yet done the research to know if, depending on what this court does, if the trial court's ruling to dismiss our claims is upheld, where we go from there. I honestly do not know at this point standing before the court. I would be happy to answer any questions that the court may have on absolute immunity. Otherwise, I don't... Thank you very much for your time. Thank you both for your argument, very interesting. We will take the case under consideration and render a decision in due course.  Thank you.